Oyez, oyez, oyez. All persons having business before the Honorable, the United States Court of Appeals for the District of Columbia Circuit, are admonished to draw near and give their attention, for the Court is now sitting. God save the United States and its Honorable Court. Be seated, please. Case number 18-1022 et al., George Louie et al. Petitioners v. Stephen Dickson, Administrator et al. Mr. Steland for the Petitioners and Mr. Gunther for the Respondents. Good morning. Good morning, Your Honors, and may it please the Court. On October 30, 2018, our petitioners were awaiting the FAA's brief in case number 18-1022. We were very curious to see how the FAA would defend its decision to segment this airport expansion project from a then-ongoing environmental assessment. We were very curious to see how the FAA was going to defend its written concurrence in an environmental evaluation that reaffirmed a 2011 analysis, and we were very interested in seeing how the FAA would defend its denial of our petition for reconsideration. It looked like a normal NEPA case, the kind that this Court sees often. But on October 31, the FAA wrote a letter to the State Department. They didn't file a brief. They wrote a letter, and that letter said that they were withdrawing the concurrence in the written re-evaluation. And as a result, that changed everything. Instead of a brief, they filed a motion to dismiss. The motion to dismiss said that all of our claims were moot. The motion to dismiss said this Court was powerless to grant any kind of relief, and that the FAA had provided our petitioners with a written re-evaluation. They provided our petitioners with everything that we could reasonably ask for. This page-and-a-half analysis of October 31 ignored nine years of consistent agency practice. Let me ask you this, Mr. Steele. Does the FAA have a legal obligation under the state block grant program to concur in Paulding County? They have no legal obligation to do so. Your Honor, not as I read this. What the state block grant program does is to remove any Federal action, if you will. And therefore, surely there is some... If they had no legal obligation to concur in the written re-evaluation, then what's the harm in withdrawing from it? Because... I mean, you just made their point that they haven't done anything to harm you. The concurrence was, in our judgment, legally required because this was not a state block grant program. And that gets to the confusion that the government has caused, because what they've done is they have melded the merits... So you're saying if it was under the state block grant program, then there is no obligation for them to weigh in, and therefore there would be no consequence for them withdrawing. But you're saying it was not part of the state block grant program. That is correct. I am saying, Your Honor, that if you go back and look at how the agency has treated this, from 2011, when this program, this project, was listed as a proposed Federal action, and that's at Joint Appendix 124. In 2015, when the FAA... Which project are you referring to? I'm referring to the expansion project. Not the... I call it the AOC, the airline... Not the larger project. Those were both Federal actions. Clearly, there's no argument here that when the agency was presented with a proposal to grant commercial operations, that was Federal. That was all Federal. The state had no role in that. Suppose you're right that the concurrence was legally required. Yes, sir. Okay. You represent environmental petitioners who are opposed to airport expansion. When the FAA withdraws an approval that is necessary for the projects you oppose to continue, it doesn't harm your clients. That benefits your clients. It harms the people on the other side of the case who want the airport expansion. Yes. But as part of that, Your Honor, if you go back and you take a look at what the agency did in 2014 when they agreed to conduct an environmental review of the commercial operations, they said there are 18 other connected actions. One of them is this terminal expansion project. Our plaintiffs, our petitioners, rather, are harmed not just by commercial, but they are harmed because of their longstanding interest in the dirter, which lives in the creek adjacent to one of the petitioner's properties and would be significantly harmed if this project goes forward. What would have happened if the FAA had never concurred to begin with? If the FAA had never concurred to begin with… What would you have done? We would have done what we did there, which is to say that we would have pressed the FAA to say that the reliance on a 2011 environmental analysis that was wrong because it had bad traffic, it was wrong because it ignored the 4F protections, it was wrong because it ignored impacts on water quality. We would have said to the FAA, you cannot allow this project to go forward because it's your project. I mean, you would have said that in correspondence or something, but I mean in terms of an actual legal action. Would you have filed a cause of action, or what would have happened if the FAA had never concurred? If the FAA had never concurred, we would have to go back and it would be very difficult, Your Honor, to reconstruct that because it's tied in with the decision by the FAA to break this project off from the larger study. What you would have done or had to do is sue the state of Georgia because the FAA hasn't approved something. The project is going forward based on a Georgia approval, so your claim is against them for proceeding without all the necessary authorizations. No, what we would do is we would say that in the absence of an FAA approval, the analysis of the impact of this expansion project were inadequate. The FAA was still in charge at that point. This was still listed as a federal project. The FAA had not disclaimed any responsibility for it. There was federal funding, and therefore— Sure, but you need to challenge federal agency action. I mean, in theory, you could bring something for a federal agency action unlawfully withheld if you thought that the FAA needed to do something, but I guess the reason I'm asking the question is it seems like what the withdrawal did was take us back to a world as if the concurrence had never happened. And if the concurrence had never happened, then I'm not sure how you have any claim against the FAA other than something about action that was withheld that should have been taken, which is a different kind of cause you would have brought. But the world is as if the concurrence never existed, and in that case, it's hard to see what the claim is against the FAA. The claim against the FAA would be that the agency has failed to comply with its duties, its environmental duties, and other obligations in supervising this project. But you're positing a world in which they haven't approved—they haven't given a necessary environmental assessment. That harms the developers who want the project, not the environmentalists who want to stop it. I don't think so, Your Honor. If we go back and we look, what we see is that the FAA played a critical role throughout here. The FAA approved the issuance of the draft environmental assessment in 2015. That's a federal document. Suppose the FAA had said, we are just not going to approve this environmental assessment. I don't care what the facts are. We're just not going to do it. Whom does that harm? Does that harm your clients or the developers? It harms the developers, and the reason for that is because under that scenario, the state of Georgia would not go forward. But if it harms the developers, what's your injury from their failure to approve an EA on these facts? If they fail to approve the EA, that stops the project. We're benefited. And under that scenario, we get all the relief that we need. That's what we're asking for here. Yeah, that theory would give you standing to challenge an approved environmental assessment, which is exactly the opposite of what we have. Well, no, because we need to go back and we need to look at the history of this. This is, in essence, an abandonment after eight years of consistent federal practice where the FAA has treated this proposed action as a federal enterprise. And what the FAA is saying is that when we get to the really hard questions, we don't want to answer those. What we're going to do is we're just going to relegate it all to the state. We're going to dump it off on GDOT. And for us, that's a terrible consequence because there is no valid remedy with GDOT. Despite the state block grant program, judicial review is not available. We lose the benefit of NEPA. We lose the benefit of judicial review. And we continue to be harmed. Just so I make sure I understand your argument, all this argument turns on your view that this was part of the airport operations certificate, the larger project? That that was a federal project and that the FAA didn't have the authority to carve out the expansion project and treat that as if that was being run by the state? Because that's my understanding of how the dynamics here, at least what they're trying to establish. It certainly began in that fashion. But when the FAA looked at the component that we're concerned about today, the expansion project, that was still a federal project. It was identified in the draft environmental assessment. So if we disagreed with you, if that wasn't the case, if it was part of the state block grant program, then your case goes away. Yes, sir. That is true. And what is terribly important here is for us to remember that when we're talking about jurisprudence or jurisdiction, we have to separate the merits from the allegations. That's city of Waukesha, that's Supreme Court jurisdiction. You have to accept our allegations as correct, that we have a credible case and we have a reason to prevail. Under those circumstances, we are injured. We are injured when the FAA washes its hands of a project that it has supervised for eight years, whether it's the big project or the smaller one, under any circumstance, and fails to articulate a reason for doing so. That's the critical thing. What we have here is not only a factual error, but we have a decision in a page and a half that reverses eight years of agency practice with no reasoning. Now, maybe they can do it. Maybe it's possible for the FAA to explain this. But they haven't done so so far. Certainly not reconsideration. Certainly not in this court. And the reason they haven't done it is because there's no explanation for either the notion that we're wrong and the hypothetical listed by Judge Griffith is correct. It was always a state block grant program. Maybe we're wrong. But they haven't said that. They haven't explained it. You asked for reconsideration. Yes. If that had been granted, wouldn't you be in exactly the same place as now? No. No, because the FAA was in charge. They had the hat on that was supervising the program. If there had been reconsideration, what the FAA would have had to do in our favor, the FAA would have concluded that the environmental analysis for this specific project was outdated, obsolete, and inadequate under any standard. That it was using old data, that the alternatives selected were tainted, and that it needed to be updated with an analysis, not just underneath. So suppose they just grant reconsideration and then just don't say anything. If they grant reconsideration and don't say anything, what they've done presumably is to invalidate their earlier approvals. And then what would happen is that you couldn't segment this, and this project would have either met the same fate as the rest of it when the FAA pulled the plug nine months later, or they would have had to conduct their own analysis, separate and apart, that looked at this project in terms of, is there still a purpose and need, or is this just a place to dump dirt? The request for reconsideration was a request to the FAA to get its facts straight and to make a different decision. Because the FAA was in charge, that would have meant that the airport authority could not go forward. Now, let me make one final point here because I think it's important, and we should have developed it more in our brief. There's repeated reference to the role of the state in all this, and we see this in various environmental documents and things like that. But in the FAA context, the state wears two hats. One hat is when they regulate and use the block grant program. That's one hat. The other hat is when it's a federal program, because under FAA procedures, if you're doing an environmental assessment, it's the applicant, it's the state, that has the primary responsibility for doing things, and the FAA reviews, approves, and concurs. In this case, where we see consistent state action, that's because they're wearing not the state block grant hat. They're wearing the other one, where they're submitting things to the FAA for approval and concurrence. Okay. Unless my colleague— Just one more from me. Surely. Suppose Judge Griffith is right that one essential element of your success in this case is that these approvals are outside the scope of the block grant. Is there any procedural bar to our considering that question? You said that standing and merits are different. That's right. Just clearly right, but we're here on review of final agency action. It's not like we're up on a 12B1 as opposed to a 12B6. Wouldn't we just answer that question now if we think the case turns on it? I think what we need to realize there, Judge Katz, is that the state and the Georgia Department of Transportation works hand in glove with the FAA. It's another state agency. It's going to respect any decision of the FAA. And so if the determination of this court is that the FAA's analysis under federal law was flawed, it would be remarkable to have a state agency say, never mind, we're going to use state money and we're going to bill this thing anyway. I don't think that would happen. And so I think we would get relief. We surely are injured, and I think it's redressable. And I'd like a minute, if I may, for rebuttal. Thank you. Good morning. Good morning. I'm David Gunter from the Department of Justice here on behalf of FAA. I'd like to begin my argument by explaining to the court what's really at stake in this case, but I can't do that. There's no more controversy here. This case is not occurring on October 30, 2018. It's occurring in 2019, after the withdrawal letter has been issued. And as of today, FAA is no longer a part of the dispute that these petitioners have with their neighbor airport. They asked us to reconsider our concurrence in the dispute in NEPA analysis here. We did so. We withdrew our concurrence. And so as of today, there's no existing FAA decision that allows this project to be billed. Why did the FAA get involved in it at all, under your theory? Well, there are a couple of reasons. They had no legal obligation to, under your theory, right? That's right. There are a couple of reasons, and one of them is that this goes back to when the airport first opened in 2005, when Georgia was not a participant in the block grant program. And so FAA has been involved in this site continually over the years, but its role has changed. In 2008, Georgia was authorized to participate in the block grant program, and the block grant agreement, which the court can read in the joint appendix, explicitly gives it the authority to approve airport layout plans. Now, as the program got ramped up, FAA signed things. And so in this instance, we signed the written reevaluation, frankly, because the state asked us to. Our guidance documents and advisory circulars that implement the state block grant program say that we will continue to provide advice to the state and consult with them. We have more NEPA expertise on airport issues than Georgia has. But this court has said that providing advice to a state on NEPA issues doesn't put the federal agency at risk. In that capacity, was FAA acting on an application for the airport operating certificate, or was it acting at a time when the state block grant was the operative authority? Which is it? In 2011, at the time of the supplemental EA and at the time of the written reevaluation, the state had block grant authority. But if the court goes back and looks at FAA's record of decision from 2011 and the papers that Georgia and the applicants submitted in support of that, they were trying to get their airport operating certificate. I'm sorry, not an airport operating certificate, airport layout plan. The airport operating certificate pertains to commercial service. They were trying to get their airport layout plan approved, and that was the state's responsibility. But those documents say that we are seeking federal approval so that the airport can compete for state or federal funding. There may have been follow-on actions that involved some exercise of federal discretion, and it's good for FAA to participate in the environmental analysis so that it can get its ducks in a row if there are later applications for that kind of thing. That's not unusual. Do you agree that if FAA, at the time of the written reevaluation, was acting on an application for an airport operating certificate, that that's a federal action? Yes. So what were you doing at that time? What was FAA doing at that time? We were not acting on an application for an airport operating certificate. How do you explain the difference with your friend? Your friend says differently. Well, I think that he is conflating a number of actions that, under the block grant program, are treated separately. This is a general aviation airport. It does not have commercial service, and under the block grant agreement, the state has authority to approve changes to the airport layout plan for that airport. If commercial service is introduced, then FAA has the responsibility to approve that action and to issue the airport operating certificate. As the court knows, these actions were happening in parallel. In 2014, the FAA published a Federal Register Notice that said, we are going to do an EA for the commercial service airport operating certificate, and we're going to consider these actions. The Federal Register Notice said, some of these actions are connected to the airport operating certificate, and some of them are not connected, but we're going to look at them because they happen to be occurring at Paulding Airport at about the same time. But in the end, the Part 139 Airport Operating Certificate EA fell behind this general aviation project. The airport wanted to move forward with the general aviation project, and so it asked Georgia and FAA to look at that project separately, which we agreed to do. Now, that is not a NEPA violation for two reasons. One is that the Federal Register Notices don't do anything. Your argument is the FAA didn't need to get involved at that point. We did not need to be involved in the airport layout plan approval. Why were you? Why sign the concurrence? I don't get that. One argument is that you had a legal obligation to do so, which is Mr. Steenberg's argument. What's the argument to the contrary? We were trying to do our best to assist the state in carrying out its NEPA obligations, which are its responsibility under the Block Grant Statute and under its agreement. I mean, your basic idea is it's as if Georgia called up somebody in the FAA and said, hey, we've done this, can you just take a quick look at us and quick look at it and make sure we didn't do anything that leaps out to you as egregiously wrong. And then on the phone, the person says, I took a quick look at it. Yeah, it looks all right to me. And that's what you think was encapsulated by the signed concurrence. Yes, so we think that the state would have been able to go forward without the signed concurrence from us. But if the state does need our concurrence, as some of the court's questioning has indicated, they don't have it. Let's assume that FAA is required to participate in this decision. In that case, the withdrawal letter unambiguously makes this case moot by taking away any concurrence that the FAA might once have provided. So even if you assume their view of the merits, which the court is required to do on this jurisdictional question, their view of the merits is our need for concurrence is required and they don't have it, and therefore they are not injured by any FAA action. Yeah, I get that. But on the other hand, your friend says that what's underlying this dispute is a disagreement about whether federal approval is necessary for this category of projects or whether people should be addressing these issues before the federal agency or the state agency. And you all have said the answer is before the state agency. How do they tee up judicial review of that question? Georgia has an APA, a state APA, that allows for review of state agency actions, and that would be an appropriate place for them to challenge. How do they tee it up as against FAA? I'm not sure that FAA has anything to say about that. I mean, FAA does review. Well, their legal theory is that you're the regulator. In that case, they can sue the state and they can say the state doesn't have authority under its block grant agreement to do this kind of action on its own, and the state courts would interpret the block grant agreement and would either agree with that or disagree with that. Now, FAA also exercises supervision over block grant participants to make sure they are complying with the terms of the block grant program. Those provisions are also in the joint appendix, and we can permanently suspend or temporarily suspend a state that we find not to be in compliance. Generally, then, we try and work with them to get them back into compliance, and that's where FAA's role as a sort of NEPA consultant comes in. We are trying to help the state understand its NEPA obligations and carry them out and comply with them when it takes actions that are delegated to it under the state block grant program, and I think that Congress intended for that to happen. If the court looks at the block grant statute, which is 49 U.S.C. 47128, it requires FAA to ensure that a state will be able to carry out NEPA responsibilities. So this is not a situation where Congress ordered us to just step away and let the state do everything. No, FAA is involved in the record here because we are supposed to be lending our expertise and exercising some supervision over this kind of thing, but that doesn't mean that we supervised this project. This is an action, approval of the airport layout plan, that the state has authorities undertake on its own, and if the state had undertaken it on its own without our concurrence, we believe it could have done that. When we gave our concurrence, in our view, that did not affect any legal rights or obligations. That's the final agency action argument in our brief. But the court doesn't even need to get there. It can decide the case simply on the fact that we've now withdrawn our concurrence. So if there was ever any injury from FAA's action here, that injury is now resolved. We've essentially given them administratively the very same relief that they're asking for from the court. Now, Mr. Seeland says if this had come before FAA originally, they would have pressed FAA to say that Georgia's NEPA analysis is inadequate, and that just shows the kind of relief that they're seeking here. But the court can't order FAA to pass judgment on a state NEPA analysis. All it can do is review FAA orders, and we've withdrawn that order here. That should end this case. The case is moot, and they're no longer injured by any FAA action. Unless the court has further questions? Okay. Thank you. How much time? Did Mr. Steenberg have? Counsel, we don't have any time. Maybe if I could have one minute. Sure. I'll give you one minute. Thank you, Your Honor. Really quickly. If you take a look at the appendix where the FAA concurred in this written reevaluation, what you will see is a document where the state signs off, the feds sign off, and in its letter, this is joint appendix page 20, in its letter, the FAA said, oh, well, this was merely a gesture of support. There's no indication that the FAA was anything other than an equal partner. Our primary claim, Your Honor, is that for years, the FAA treated the expansion project as a federal project with federal funds. Federal funds? Look at page 669 of the joint appendix where there's federal money set aside for this project. If it was a state block grant program, there would be no money there because it would be paid for out of the state block grant. And so under any circumstances, we think you need to remand this. Counsel, as customarily and as you can expect, did a magnificent job explaining the government's view. None of that is in this letter. We need to have the FAA look at it. We need to have the FAA explain in detail the interrelationship, how it really intends to run this program in Georgia, where judicial review occurs only if you petition the state within 30 days of the state action, and you're in state court. So the state block grant program implementing NEPA, there's no judicial review. We can't come here. Thank you, Your Honor. Thank you very much. We have your argument. The case is submitted.
judges: Griffith, Srinivasan, Katsas